UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAILYA ANN BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 16-cv-09784 |
| v. | ) |
| | ) Judge: Honorable Jorge L. Alonso |
| I.C. SYSTEM, INC., | ) |
| | ) Magistrate: Honorable Sidney I. Schenkier |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS**

Now comes GAILYA ANN BROWN ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd., responding to I.C. SYSTEM, INC.'s ("Defendant") Statement of Material Facts, pursuant to Local Rule 56-1, as follows:

**I. PARTIES**

1. Defendant self identifies as "a dedicated and talented collection of Accounts Receivable Management experts." (Dkt. 1, ¶ 7; Dkt. 10, ¶ 2). Defendant's principal office is located at 444 Highway 96 E, St. Paul, Minnesota. *Id.* Defendant is in the business of collecting consumer debts for others throughout the country, including in Illinois. *Id.*

   **RESPONSE:** Admit.

2. Plaintiff Gailya Brown ("Plaintiff") is a 36 year old natural person residing at 717 N. Troy Street, Chicago, Illinois, which lies within the Northern District of Illinois. (Dkt. 1, ¶ 4).

   **RESPONSE:** Admit.

## II. JURISDICTION AND VENUE

1. This action arises under and is brought pursuant to the FDCPA and TCPA. (Dkt. 1, ¶ 2; Dkt. 10, ¶ 2). Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1692, 47 U.S.C. §227, 28 U.S.C. §§1331 and 1337, as the action arises under the law of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. §1367. *Id.*

**RESPONSE:** Deny to the extent that Plaintiff has since withdrawn her claim pursuant to the TCPA. *See* Plaintiff's Notice of Voluntary Dismissal (Docket Entry 27).

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Northern District of Illinois and a substantial portion of the events or omissions giving rise to the claims occurred within the Northern District of Illinois. (Dkt. 1, ¶ 3; Dkt. 10, ¶ 2).

**RESPONSE:** Admit.

## III. PLAINTIFF'S ACCOUNT AND CALLS MADE BY DEFENDANT

1. Defendant made calls to phone number (312) 285-9382 in 2015 in connection with an AT&T debt associated with a third party debtor. (Decl of Michael Selbitschka, Ex. A).

**RESPONSE:** Admit.

2. All of the calls attempted on this account were made with the LiveVox Human Call Initiator. (Decl. of Michael Selbitschka, ¶ 17).

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

3. The last attempt made by Defendant to call phone number (312) 285-9382 was in December 2015. (Decl of Michael Selbitschka, Ex. A)

**RESPONSE:** Admit.

4. Phone number (312) 285-9382 were provided to Defendant by AT&T. (Decl of Michael Selbitschka, Ex. A; Decl. of Michael Selbitschka, ¶¶6-8).

**RESPONSE:** Admit.

5. Defendant made calls to phone number (312) 285-9382 between October and December 2015 in relation to account number XXXXXXXX-X01-39, three of which were connected. (Decl. of Michael Selbitschka, Ex. B; Decl. of Michael Selbitschka, ¶ 13).

**RESPONSE:** Deny to the extent that Defendant called Plaintiff's cellular phone in October 2014 in an attempt to collect upon a debt belonging to an unknown third party. During this undisputed connected call, Defendant's corporate designee testified that Defendant does not have a recording of this call, and that it is possible that the person who answered that phone call told Defendant that they had the wrong phone number. (Ex. A, Selbitschka Dep., 60:22-25; 61:1-20; 64:20-25; 65:1-15).

6. During 17 of Defendant's calls to phone number (312) 285-9382, the telephone system detected an answering machine. (Decl. of Michael Selbitschka, ¶ 19; Decl. of Michael Selbitschka, Ex. B). Since it is ICS' Policy to not leave any voicemail messages, the telephone system "Hung Up." *Id.*

**RESPONSE:** Admit.

7. During the October 26, 2015 call to phone number (312) 285-9382, there was a connection, but the call was disconnected before Defendant's customer service

representative came on the line. (Decl. of Michael Selbitschka, ¶ 20; Decl. of Michael Selbitschka, Ex. B).

**RESPONSE:** Admit.

8. Two of Defendant's connected calls to (312) 285-9382 were connected on October 20, 2015, and December 3, 2015. (Decl. of Michael Selbitschka, Ex. B; Decl. of Michael Selbitschka ¶ 25).

**RESPONSE:** Deny to the extent that there were three connected calls to (312) 285-9382, connected on October 3, 2014, October 20, 2015, and December 3, 2015. *See* attached Plaintiff's Exhibit A, 45:2-3; 59:20-22; 60:2-21; 64: 20-25, for a true and accurate copy of the deposition transcript of Defendant's corporate designee, Michael Selbitschka; *see also* Decl. of Michael Selbitschka ¶¶26-27.

9. During the two connected calls, Defendant's customer service representatives were not able to confirm that the called party was the right party because the called party did not provide any identifying information before hanging up. (Decl. of Michael Selbitschka, ¶¶ 21, 22 and Exhibits C & D). There were no threats of garnishment and no requests to stop calling made during any call. (Decl. of Michael Selbitschka, ¶¶ 23, 24 and Exhibits C & D).

**RESPONSE**: Deny. There were three connected calls placed to Plaintiff's cellular phone, (312) 285-9382. *See* Plaintiff's Exhibit A, Selbitschka Dep., 45:2-3; 59:20-22; 60:2-21; 64: 20-25). In addition, for the connected call on October 3, 2014, Defendant's corporate designee testified that Defendant does not have a recording of this call, and that it is possible that the person who answered that phone call told Defendant that they had the wrong phone number. (Ex. A, Selbitschka Dep., 60:22-25; 61:1-20; 64:20-25; 65:1-15).

Finally, Plaintiff testified that one of Defendant's female representative mentioned that she could garnish Plaintiff's wages. *See* Plaintiff's Exhibit B, 120:19-24; 121:1-4; 166:19-24 for a true and correct copy of the transcript of Plaintiff's deposition. Plaintiff also testified that she told Defendant's employee or employees to stop calling (Ex. B, Plaintiff's Dep., 89:17-23; 97:2-6; 118:8-10; 170:14-17; 199:1-3).

IV. **OUTBOUND CALL SYSTEM USED BY DEFENDANT**

1. Kevin Stark is the Director of Product Management for LiveVox, Inc. ("LiveVox"), has personal knowledge of LiveVox and has reviewed the business records maintained by LiveVox. As LiveVox's Director of Product Management, Mr. Stark is required to and does understand LiveVox's outbound dialing systems, including the outbound dialing system known as the Human Call Initiator ("HCI"). (Decl. of Kevin Stark, ¶¶ 1, 2).

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

2. ICS makes phone calls to debtor phone numbers provided by clients through LiveVox HCI. (Decl. of Kevin Stark, ¶8).

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

3. HCI is one of LiveVox's human-initiated outbound dialing systems. (Decl. of Kevin Stark, ¶ 6). HCI, like all of LiveVox's human-initiated systems, is a distinct outbound dialing system, separated from LiveVox's other outbound dialing systems at the

hardware and software level. *Id.* HCI uses a unique combination of software and hardware that is not shared with any other LiveVox system. *Id.* The software underlying HCI is designed only to enable the type of calls launched in HCI. *Id.*

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

4. All HCI calls are routed through a set of servers exclusively dedicated to HCI calls. (Decl. of Kevin Stark, ¶ 7). Those HCI servers cannot launch automated calls. *Id.*

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

5. Every call launched using HCI requires human intervention by an agent; an employee or other person working on behalf of the LiveVox customer making the call. (Decl. of Kevin Stark, ¶ 8). The human intervention takes the form, in part, of a "clicker agent" at I.C. System, Inc. clicking on a dialogue box to confirm the launching of a call to each particular telephone number. *Id.* The call will not be launched unless the clicker agent clicks on the dialogue box. *Id.*

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

6. The clicker agent is able to monitor a real-time dashboard that contains information about "closer agent" availability. (Decl. of Kevin Stark, ¶ 9). The closer agent is the agent designated by the LiveVox customer to speak with the call recipient. *Id.* In order

for a call to be launched in HCI, the clicker agent must take the action previously described and there must also be a closer agent who is available to take the call. *Id.*

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

7. HCI is designed to allow a clicker agent to control how often calls are made by reviewing the dashboard and making judgments based on that information when deciding when to launch any particular call. *Id.*

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

8. HCI does not use any predictive or other kind of algorithm to engage in predictive dialing of any kind. (Decl. of Kevin Stark, ¶ 11).

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

9. HCI does not use a statistical algorithm to minimize the time that agents spend waiting between calls, nor does it use an algorithm to minimize the occurrence of a consumer answering a call when no closer agent is available. *Id.*

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

10. HCI does not have the present capacity to auto-dial; it does not have any features that permit autodialing and there are not features in HCI that can be turned on to enable autodialing. (Decl. of Kevin Stark, ¶ 12).

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

11. HCI does not have the potential capacity to auto-dial; there are no features that can be activated, deactivated, or added to the system to enable auto-dialing. (Decl. of Kevin Stark, ¶ 13). The server that launches HCI calls only recognizes a request from the HCI agent presentation layer, which itself requires a click for each call. *Id.*

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

12. HCI does not have the capacity to produce numbers to be called using a random or sequential number generators. (Decl. of Kevin Stark, ¶ 14).

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

13. HCI does not have the capacity to generate random/arbitrary ten digit phone numbers and then to dial them. (Decl. of Kevin Stark, ¶¶ 15, 16).

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

14. HDCI does not have the capacity to generate sequential ten digit phone numbers and then to dial them. (Decl. of Kevin Stark, ¶ 16).

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

15. HCI does not use an artificial or pre-recorded voice. (Decl. of Kevin Stark, ¶ 17).

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

## V. LACK OF INJURY-IN-FACT AND/OR DAMAGES SUFFERED BY PLAINTIFF AS A RESULT OF CALL MADE BY DEFENDANT

1. Plaintiff has no personal knowledge of the telephone system that Defendant used to call her. (Decl. of SPF, Ex. 1, Plaintiff's Response to Request for Admission No. 8).

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

2. Plaintiff also does not have personal knowledge of the names of any of Defendant's representatives who called phone number (312) 285-9382 or with whom she spoke on the phone. (Decl. of SPF, Ex. 4, 116:6-24; 117: 1-15).

**RESPONSE:** Admit.

3. Although Plaintiff maintains that she expressly revoked consent to call her cellular phone number (312) 285-9382, she did not expressly revoke consent. (Decl. of Michael Selbitschka, Ex. C, D) Plaintiff has no evidence or proof that she revoked consent for

Defendant to call her cellular phone number (312) 285-9382. (Decl. of SPF, Ex. 4, 117:16-24; 118:1-10).

**RESPONSE:** Deny. There was a conversation between Plaintiff and Defendant's employee on October 3, 2014, for which Defendant's corporate designee testified that Defendant does not have a recording of this call, and that it is possible that the person who answered that phone call told Defendant that they had the wrong phone number. (Ex. A, Selbitschka Dep., 60:22-25; 61:1-20; 64:20-25; 65:1-15). Moreover, Plaintiff also testified that she told Defendant's employee or employees to stop calling (Ex. B, Plaintiff's Dep., 89:17-23; 97:2-6; 118:8-10; 170:14-17; 199:1-3).

4. LiveVox HCI does not engage in predictive dialing of any kind, cannot auto-dial, cannot produce numbers to be called using a random or sequential number generator, cannot generate random/arbitrary ten digit phone numbers and then to dial them, and does not use an artificial or prerecorded voice. (Decl. of Kevin Stark, ¶¶ 11, 12, 14, 15, 16, 17).

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

5. LiveVox HCI is not an automatic telephone dialing system ("ATDS") as defined by the FCC under the TCPA, 47 U.S.C. § 227(a)(1).

**RESPONSE:** This statement is uncontroverted, as it deals with Defendant's telephone dialing system. Plaintiff has since withdrawn her claim arising under the TCPA, and consequently, this statement is immaterial to her pending claims. (Dkt. 27).

6. Plaintiff has not sought any medical and/or psychological treatment or missed work due to Defendants alleged conduct in Plaintiff's Complaint. (Decl. of SPF, Ex. 1, Plaintiff's Response to Request for Admission No. 2-4 and 6.)

**RESPONSE:** Deny. Plaintiff did indeed miss work due to Defendant's conduct. Plaintiff testified that she was suspended from her employment at "Wilson's" for answering Defendant's phone call while at work, and was not able to return to work for a couple of days. (Ex. B, Plaintiff's Dep., 95:10-18; 97:2-6).

7. To date, Plaintiff has not disclosed any information, documents or relevant records related to her claims for statutory, actual or punitive damages. (Decl. of SPF, Ex. 3, ¶¶ 2, 3).

**RESPONSE**: Deny. Plaintiff testified that she expended money to download and maintain an application on her cellular phone to help block Defendant's phone calls. (Ex. B, Plaintiff's Dep., 194:7-10; 178:23-24; 179:1-6). Plaintiff also testified that she that she was suspended from her employment at "Wilson's" for answering Defendant's phone call while at work, and was not able to return to work for a couple of days. (Ex. B, Plaintiff's Dep., 95:10-18; 97:2-6). Finally, Plaintiff testified that she lost capacity on her cellular phone because of Defendant's phone calls. (Ex. B, Plaintiff's Dep., 103:10-17).

8. To date, Plaintiff has not disclosed any documents or relevant records related to her claims that Defendant violated the FDCPA, ICFA or TCPA. (Decl. of SPF, Ex. 1, ¶¶ 18, 19).

**RESPONSE:** Deny. Plaintiff testified that she never provided Defendant with consent to contact her, as the debt belonged to an unknown third party. (Ex. B, Plaintiff's Dep., 168:20-24). Moreover, Plaintiff testified that Defendant was calling her cellular phone,

(312) 285-9382, asking to speak with "Shalunda Roper" and another individual, both of whom she is unfamiliar with, in an attempt to collect upon a debt. (Ex. B, Plaintiff's Dep., 50:6-24, 51:1-12). Nevertheless, Plaintiff told Defendant's employee or employees to stop calling (Ex. B, Plaintiff's Dep., 89:17-23; 97:2-6; 118:8-10; 170:14-17; 199:1-3). Likewise, in addition to asking Defendant to stop calling her, Plaintiff testified that she apprised Defendant that she was not the individual it was seeking to collect upon. (Ex. B, Plaintiff's Dep., 86:18-24, 87:1). Furthermore, Plaintiff testified that one of Defendant's female representative mentioned that Defendant could garnish Plaintiff's wages, even though Plaintiff did not owe the debt. (Ex. B, Plaintiff's Dep., 120:19-24; 121:1-4; 166:19-24). Plaintiff also testified that on several answered calls from Defendant, she experienced "dead air," and did not even have an opportunity to speak with Defendant. (Ex. B, Plaintiff's Dep., 77:22-24; 78:1-2; 113:14-21; 167:11-22). Lastly, Defendant's witness also mentioned that the collection of a debt from an individual other than the debtor is against the FDCPA. (Ex. A, Selbitschka Dep., 123:15-22).

9. Plaintiff does not have in her possession and has not disclosed any telephone bills showing incoming and outgoing calls for phone number (312) 285-9382 to support her claims under the FDCPA, ICFA and TCPA. (Decl. of SPF, Ex. 4, 33:23-24; 34:1-2; 60:12-24; 61:14-24; 62:1-24; 104:23-24; 105:1-17).

**RESPONSE:** Admit. However, Plaintiff has testified that her cellular phone provider does not provide her with monthly statements, nor does it allow her to access information showing incoming and outgoing calls for phone number (312) 285-9382. (Ex. B, Plaintiff's Dep., 179:3-13). Moreover, Plaintiff's counsel has tendered Plaintiff's subpoenaed cellular

phone records to Defendant, reflecting incoming and outgoing calls for phone number (312) 285-9382.

10. During Defendant's two connected calls to phone number (312) 285-9382, the called party did not provide any identifying information to Defendant's customer service representatives prior to hanging up. (Decl. of Michael Selbitschka, ¶¶ 21, 22).

**RESPONSE**: Deny. There were three connected calls placed to Plaintiff's cellular phone, (312) 285-9382. *See* Plaintiff's Exhibit A, Selbitschka Dep., 45:2-3; 59:20-22; 60:2-21; 64: 20-25). In addition, for the connected call on October 3, 2014, Defendant's corporate designee testified that Defendant does not have a recording of this call, and that it is possible that the person who answered that phone call told Defendant that they had the wrong phone number. (Ex. A, Selbitschka Dep., 60:22-25; 61:1-20; 64:20-25; 65:1-15). Furthermore, Plaintiff testified that she told Defendant's employee or employees to stop calling (Ex. B, Plaintiff's Dep., 89:17-23; 97:2-6; 118:8-10; 170:14-17; 199:1-3). Plaintiff has also testified that Defendant was calling her cellular phone, (312) 285-9382, asking to speak with "Shalunda Roper" and another individual, both of whom she is unfamiliar with. (Ex. B, Plaintiff's Dep., 50:6-24, 51:1-12). Finally, in addition to asking Defendant to stop calling her, Plaintiff testified that she apprised Defendant that she was not the individual it was seeking to collect upon. (Ex. B, Plaintiff's Dep., 86:18-24, 87:1).

11. Upon hearing the two recordings of calls connected between Defendant and Plaintiff, Plaintiff could not identify what actions by Defendant, if any, violated any state or federal laws. (Decl. of SPF, Ex. 4, 197-200).

**RESPONSE:** Deny to the extent that there were three connected calls placed to Plaintiff's cellular phone, (312) 285-9382. *See* Plaintiff's Exhibit A, Selbitschka Dep., 45:2-3; 59:20-

22; 60:2-21; 64: 20-25). In addition, for the connected call on October 3, 2014, Defendant's corporate designee testified that Defendant does not have a recording of this call, and that it is possible that the person who answered that phone call told Defendant that they had the wrong phone number. (Ex. A, Selbitschka Dep., 60:22-25; 61:1-20; 64:20-25; 65:1-15). Lastly, Plaintiff testified that she believed it is against public policy for an entity to call an individual which it knows it should not be calling. (Ex. B, Plaintiff's Dep., 180:12-15).

12. Plaintiff did not reach out to the Sulaiman Law Group for representation related to Defendant's calls. (Decl. of SPF, Ex. 4, 39:5-24, 40:1-21).

**RESPONSE:** Deny. Plaintiff actually filed a complaint through the application on her cellular phone, which provided her consent to be contacted by an attorney, thus ultimately placing her in contact with Sulaiman Law Group. Plaintiff even testified that Sulaiman Law Group never asked her for money, and that she would have had no intention of suing Defendant had it stopped calling her. (Ex. B, Plaintiff's Dep., 164:4-21).

13. The Sulaiman Law Group reached out to Plaintiff. *Id.*

**RESPONSE:** Deny to the extent that Sulaiman Law Group did not directly reach out to Plaintiff. Once Plaintiff filed a complaint through the application on her cellular phone, which provided her consent to be contacted by an attorney, she was then placed into contact with Sulaiman Law Group.

14. When the Sulaiman Law Group reached out to Plaintiff, they did not identify themselves as attorneys or sign any representation agreement with Plaintiff. (Decl. of SPF, Ex. 4, 41:5-9; 45:16-24; 46:1-11).

**RESPONSE**: Deny. Plaintiff testified that during her initial phone call with the Sulaiman Law Group, she did not recall if Sulaiman Law Group identified themselves as attorneys. (See. Ex. B, Plaintiff's Dep., 41:13-15; 52:13-24).

15. To date, Plaintiff has provided no documentation relevant to her claimed financial losses in the Complaint in support of her claim for actual damages. (Decl. of SPF, Ex. 4, 95:10-24; 96-101; 102:1-5).

**RESPONSE:** Deny. Plaintiff testified that she expended money to download and maintain an application on her cellular phone to help block Defendant's phone calls. (Ex. B, Plaintiff's Dep., 194:7-10; 178:23-24; 179:1-6). Plaintiff also testified that she that she was suspended from her employment at "Wilson's" for answering Defendant's phone call while at work, and was not able to return to work for a couple of days. (Ex. B, Plaintiff's Dep., 95:10-18; 97:2-6). Finally, Plaintiff testified that she lost capacity on her cellular phone because of Defendant's phone calls. (Ex. B, Plaintiff's Dep., 103:10-17).

16. Plaintiff and her attorneys have not discussed damage amount or settlement negotiations during this case. (Decl. of SPF, Ex. 4, 133:21-24; 134:15-24; 135; 136:1-7).

**REPONSE:** Deny. Plaintiff has testified that she has had communications with her attorneys regarding settlement, and has even granted her attorneys with settlement authorization. (Ex. B, Plaintiff's Dep. 165:2-12).

Dated: August 7, 2017                  Respectfully submitted,

                                       s/ Taxiarchis Hatzidimitriadis
                                       Taxiarchis Hatzidimitriadis, Esq. #6319225
                                       Counsel for Plaintiff
                                       Sulaiman Law Group, Ltd.
                                       2500 South Highland Avenue, Suite 200
                                       Lombard, Illinois 60148

(630) 575-8181 x110 (phone)
(630) 575-8188 (fax)
thatz@sulaimanlaw.com

**CERTIFICATE OF SERVICE**

  The undersigned, one of the attorneys for Plaintiff, certifies that on August 7, 2017, he caused a copy of the foregoing, **PAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS,** to be served electronically via CM/ECF system on:

GORDON & REES LLP
Sean P. Flynn
2211 Michelson Drive, Suite 400
Irvine, California 92612
sflynn@grsm.com

GORDON & REES LLP
Angelo J. Kappas
Christina R. Spiezia
One North Franklin Street, Suite 800
Chicago, Illinois 60606
akappas@gordonrees.com
cspiezia@gordonrees.com

*Counsel for Defendant,*
*I.C. Systems, Inc.*

        Respectfully submitted,

        s/ Taxiarchis Hatzidimitriadis
        Taxiarchis Hatzidimitriadis, Esq. #6319225
        Counsel for Plaintiff
        Sulaiman Law Group, Ltd.
        2500 South Highland Avenue, Suite 200
        Lombard, Illinois 60148
        (630) 575-8181 x110 (phone)
        (630) 575-8188 (fax)
        thatz@sulaimanlaw.com