IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GAILYA ANN BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 9784 |
| | ) | |
| v. | ) | Judge Jorge Alonso |
| | ) | |
| I.C. SYSTEM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Gailya Ann Brown, brings this case against defendant I.C. System, Inc. ("ICS"), claiming that defendant's efforts to collect a debt from her violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/1 *et seq.*[1] The case is before the Court on defendant's motion for summary judgment. For the following reasons, the motion is granted in part and denied in part.

**BACKGROUND**

The following is a recitation of material facts as they appear in the light most favorable to plaintiff, the nonmoving party. The Court does not "necessarily vouch for the objective accuracy of all factual statements here, but [defendant has] moved for summary judgment, which requires [viewing] the evidence in this harsh light." *Fish v. Greatbanc Tr. Co.*, 749 F.3d 671, 674 (7th Cir. 2014).

Defendant is a debt collection agency. (Pl.'s LR 56.1 Resp. ¶ 1, ECF No. 30.) In the fall of 2015, plaintiff received numerous calls at (312) 285-9382, her cell phone number, from representatives of defendant who were trying to collect a debt owed by another person. Plaintiff

---

[1] Plaintiff's complaint also asserts a claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(iii). However, as the Court will discuss more fully below, plaintiff has abandoned that claim.

remembers receiving some calls in which defendant asked for Shalunda Roper, and others in which defendant asked for a male consumer whom the parties do not identify to protect his privacy. Plaintiff sometimes hung up immediately without saying anything, but she recalls speaking with an ICS representative on at least five occasions and, on each occasion, telling the representative to stop calling her because she is not the person they were looking for. (*See* Pl.'s Mem. in Opp'n Ex. B, Pl.'s Dep. at 36:23-37:5, 49:10-51:12, 84:9-88:15, 89:9-90:7, 172:13-24, ECF No. 29-2.) On at least one occasion, one of defendant's collectors sought to induce plaintiff to pay by telling her that she could garnish plaintiff's wages. (*Id.* at 121:1-4.) The collector told plaintiff, as plaintiff recalled at her deposition, "I have the last four digits of your Social Security number, and I can just go into your account and get the money, collect the debt." (*Id.* at 103:23-104:14.) Prior to filing this lawsuit, plaintiff reviewed the call history on her phone and counted approximately twenty phone calls that she received from defendant. (*Id.* at 90:23-91:4.)

On September 30, 2014, AT&T placed a debt with defendant for collection, and defendant opened account number 74401753 in the name of a consumer whom the parties do not identify to protect his privacy. (Pl.'s Mem. in Opp'n Ex. A, Def.'s Rule 30(b)(6) Dep. at 38:24-44:11, ECF No. 29-1). The phone number defendant received from AT&T for this account was (312) 285-9382—plaintiff's number. (*Id.* at 49:17-50:16.) According to the 74401753 account history kept by defendant, defendant made a phone call to (312) 285-9382 on October 3, 2014, which lasted sixty-one seconds. (*Id.* at 59:16-61:20.)

Defendant had a second account, file number 91080072, in the name of the same unidentified consumer as account number 74401753, with the same listed phone number, (312) 285-9382. (*Id.* at 65:16-70:5.) Defendant's records show that, in fall 2015, it placed twenty collection calls on the 91080072 account to (312) 285-9382. (Decl. of Mike Selbitschka ¶¶ 8-15,

26-27, ECF No. 25-1; *see* Pl.'s LR 56.1 Resp. ¶¶ 5-9, ECF No. 30; 30(b)(6) Dep. at 71:7-14, 102:14-112:13.) Two of these calls connected, on October 20, 2015, and December 3, 2015. (*Id.* at 71:15-22.) Defendant has recordings of these calls, and in both of them, the person who answered hung up right away, without providing any identifying information or telling the caller to stop calling. (Pl.'s LR 56.1 Resp. ¶¶ III.8-9.) Defendant does not have a recording of the October 3, 2014, sixty-one-second phone call. (*Id.*)

Plaintiff was unaware that public records had shown her cell phone number, (312) 285-9382, to be associated with both Shalunda Roper and the unidentified male consumer. (Pl.'s Mem. in Opp'n Ex. B, Pl.'s Dep. at 37:6-38:1.) Approximately ten years before filing this case, plaintiff had been a victim of identity theft. (*Id.* at 155:9-23.)

## **DISCUSSION**

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013). The Court construes all facts and

draws all reasonable inferences in favor of the nonmoving party. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016).

## I. TCPA CLAIM

Plaintiff's complaint contains three counts: Count I, for violation of the FDCPA; Count II, for violation of the TCPA; and Count III for violation of the ICFA. After defendant moved for summary judgment on all three counts, plaintiff filed a Notice of Voluntary Dismissal of the TCPA claim "pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i)" (ECF No. 27), and she opposed defendant's motion as to the other two claims.

Rule 41(a)(1)(A)(i) permits a plaintiff to voluntarily dismiss a claim without prejudice, on notice and without a court order, "before the opposing party serves either an answer or a motion for summary judgment." In this case, defendant had served both an answer and a motion for summary judgment at the time of plaintiff's notice of voluntary dismissal, so Rule 41(a)(1)(A)(i) does not apply. Because plaintiff's notice of voluntary dismissal was ineffective to dismiss the TCPA claim, the Court must consider whether to grant defendant's motion for summary judgment on that claim.

Plaintiff made no response to defendant's motion in defense of the TCPA claim, so the Court deems that claim abandoned. *See Little v. Mitsubishi Motors North Amer., Inc.*, 261 F. App'x. 901, 903 (7th Cir. 2008) (plaintiff who "failed to present facts or develop any legal arguments" as to certain claims in response to motion for summary judgment deemed to have abandoned them). The Court grants defendant's motion for summary judgment on the TCPA claim.

## II. ARTICLE III STANDING

4

Defendant argues that plaintiff lacks Article III standing because she suffered no actual injury. Neither side devotes much discussion to the issue, nor does it deserve much. As this Court and numerous courts in this district have explained, a plaintiff who claims that a debt collector made "unlawful debt collection" demands in violation of the FDCPA, *Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017), has asserted an injury that, even if "intangible," is sufficiently "concrete" to satisfy the standing requirements of Article III under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). *See Wise v. Credit Control Servs., Inc.*, No. 16 C 8128, 2018 WL 5112983, at *3 (N.D. Ill. Oct. 19, 2018) (citing cases); *McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 879-80 (N.D. Ill. 2018) (same). Plaintiff's ICFA claim is based on the same interest of plaintiff and same conduct of defendant, and therefore, for the same reasons, plaintiff has standing to assert that claim as well. Plaintiff has Article III standing.

### III. FDCPA

The FDCPA was enacted "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010). The statute "regulates interactions between consumer debtors and debt collectors," *id.* (internal quotation marks omitted), for the "purpose" of "protect[ing] consumers," *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009). Most provisions of the FDCPA apply not only to debtors but also to other persons whom a debt collector might target, such as family members, *see Todd v. Collecto, Inc.*, 731 F.3d 734, 737-39 (7th Cir. 2013), *Koval v. Harris & Harris, Ltd.*, No. 16-CV-08449, 2017 WL 1321152, at *1–2 (N.D. Ill. Apr. 5, 2017), or persons erroneously treated as the debtor, *see*

5

*Brown v. Palisades Collection LLC*, No. 1:11-CV-00445-JMS, 2011 WL 2532909, at *2, *2 n.1 (S.D. Ind. June 24, 2011) ("The FDCPA includes not only actual obligations, but also merely 'alleged obligation[s]' within its definition of a 'debt.' 15 U.S.C. § 1692a(5). The latter encompasses obligations that debt collectors attempt to enforce against the wrong party."); *see also Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 773 (7th Cir. 2007) ("[S]ections 1692d, e, or f . . . do not designate any class of persons . . . who can be abused, misled, etc., by debt collectors with impunity.").

The FDCPA forbids abusive, misleading, or unfair debt collection practices. Specifically, under the FDCPA, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including, for example, by "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). Further, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including, for example, "[t]he false representation of . . . the character, amount, or legal status of any debt," "[t]he representation or implication that nonpayment of any debt will result in . . . the seizure, [or] garnishment . . . of any . . . wages of any person unless such action is lawful and the debt collector or creditor intends to take such action," "the threat to take any action that cannot legally be taken or that is not intended to be taken," and "the use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(2), (4), (5), (10). Additionally, the FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect a debt." 15 U.S.C. § 1692f.

6

The Court evaluates whether a debt collector's practices violate the FDCPA from the standpoint of the "unsophisticated consumer." *Evory*, 505 F.3d at 774. The "unsophisticated consumer" is not the "*least* intelligent consumer," *id.*, or a "dimwit," *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2007). He has "rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences," but he may be "uninformed, naïve, and trusting." *Lox*, 689 F.3d at 822 (internal quotation marks, alterations, and citations omitted).

### A. Whether Defendant's Phone Calls Were Harassment under 15 U.S.C. § 1692d

> "Whether 'repeated phone calls were made with intent to annoy, abuse, or harass,' depends on the volume and pattern of calls." [*Hendricks v. CBE Grp., Inc.*, 891 F. Supp. 2d 892, 896 (N.D. Ill. 2012)] (quoting *Majeski v. I.C. Sys., Inc.,* 08 CV 5583, 2010 WL 145861, at *3 (N.D.Ill. Jan.8, 2010)). Generally, there are two types of evidence presented to show an intent to harass under § 1692d(5). *See id.* "First, where a plaintiff has shown that he asked the collection agency to stop calling . . . and the collection agency nevertheless continued to call the plaintiff." *Id.* "Second, the volume and pattern of the calls may themselves evidence an intent to harass." *Id.* Often, "the reasonableness of the volume and pattern of telephone calls is a question of fact best left to a jury." *Majeski,* 2010 WL 145861, at *3; *see also Bassett v. I.C. Sys., Inc.,* 715 F.Supp.2d 803, 810 (N.D.Ill. 2010) ("Because it is undisputed that [defendant] called [plaintiff] thirty-one times over a twelve day period, [plaintiff] has presented sufficient evidence raising a genuine issue of material fact that [defendant] violated Section 1692d(5) of the FDCPA.").

*Kube v. Creditors Collection Bureau, Inc.*, No. 10 C 7416, 2012 WL 3848300, at *2 (N.D. Ill. Aug. 30, 2012).

Defendant argues that it did not abuse or harass plaintiff as a matter of law under 15 U.S.C. § 1692d(5) by calling her twenty times in a period of two months. According to defendant, this relatively low volume of calls, unaccompanied by any aggravating circumstances showing an intent to harass, is insufficient to create a jury question on the issue. *See, e.g., Carman v. CBE Grp., Inc.*, 782 F. Supp. 2d 1223, 1229-32 (D. Kan. 2011) (granting summary judgment for debt collector who called 149 times in a two-month period). Defendant argues that

7

its recordings of connected calls show that plaintiff never told defendant to stop calling; on the few occasions when she picked up, she simply hung up again. Based on these records, defendant argues, plaintiff's self-serving deposition testimony in which she describes telling defendant several times to stop calling cannot create a genuine issue of fact for trial.

Defendant is incorrect. The fact that plaintiff's claims rely on "self-serving" deposition testimony is no defect at the summary judgment stage; even "'uncorroborated, self-serving testimony, if based on personal knowledge or firsthand experience, may prevent summary judgment against the non-moving party, as such testimony can be evidence of disputed material facts.'" *Marr v. Bank of Am., N.A.*, 662 F.3d 963, 968 (7th Cir. 2011) (quoting *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010)); *cf. Hendricks*, 891 F. Supp. 2d at 895 (citing *Marr* and *Montgomery* in FCDPA context). Additionally, defendant ignores the fact that it initially found records of only nineteen phone calls it had made to the (312) 285-9382 number on the 91080072 account; it only discovered the twentieth phone call after plaintiff's counsel asked defendant at its Rule 30(b)(6) deposition why plaintiff's phone records show that she had received a phone call from defendant on October 26, 2015, but the 91080072 account history revealed no such call. (Pl.'s Dep. at 102:14-112:13.) Defendant explains this discrepancy as due to an "improper refresh of the data" (Selbitschka Decl. ¶ 27), but whatever that means, it tends to show that defendant's records are no more conclusive or infallible than plaintiff's memory. A reasonable factfinder could conclude that, if defendant made one mistake in searching, processing, or maintaining its data, it may have made others.

Further, even if it were correct that defendant's records somehow trump plaintiff's testimony at the summary judgment stage (and that is not the law), defendant ignores the fact that its records can be partially reconciled with plaintiff's testimony. Defendant's records show

8

that defendant made a call to plaintiff's cell phone number on October 3, 2014, which lasted for sixty-one seconds, more than enough time for plaintiff to tell defendant that she was not the person defendant was looking for and to stop calling. Because a reasonable jury could find in plaintiff's favor if it finds her credible, there is a genuine factual dispute as to how many times defendant called plaintiff and what the parties may have said to one another during those phone calls.

Furthermore, the dispute is material because twenty calls over two months are not so few and far between that they cannot constitute a violation of § 1692(d)(5), at least under the circumstances of this case. *See Bruner v. AllianceOne Receivables Mgmt., Inc.*, 2017 WL 770993, at *2-3 (N.D. Ill. Feb. 28, 2017) (eleven phone calls over six weeks, "an average of [approximately] two calls per week[,] plausibly indicates intent to harass or annoy"). Particularly if the jury believes that defendant knew or should have known, perhaps based on the October 3, 2014 phone call, that (312) 285-9382 was not the number of the person it was trying to reach, and/or that plaintiff specifically told defendant that she was not the person defendant was trying to reach and that defendant should stop calling, it could interpret twenty calls between October and December 2015, an average of approximately 2.5 calls per week, as evidence not of a "legitimate persistent attempt to reach the plaintiff," *Carman*, 782 F. Supp. 2d at 1231, but of an intent to annoy or harass plaintiff.

The "general rule" is that whether the "volume and pattern of a debt collector's calls violates the FDCPA is a jury question," and this case warrants no exception. *See Losch v. Advanced Call Ctr. Techs., LLC*, No. 15 C 6644, 2017 WL 1344524, at *3 (N.D. Ill. Apr. 12, 2017). Defendant's motion for summary judgment is denied as to plaintiff's § 1692d claim.

**B. Whether Defendant's Phone Calls Were Deceptive Under 15 U.S.C. 1692e**

9

Defendant argues that its conduct was not deceptive under § 1692e because it did no more than attempt to reach a debtor. Its recordings show, according to defendant, that it made no attempt to deceive or mislead plaintiff; in fact, defendant argues, it never had the chance to say anything to plaintiff because she either ignored its calls or hung up right away.

Again, defendant ignores the fact that plaintiff's deposition testimony told a different story: she testified that she spoke to defendant's collectors on several occasions, she told them that she is not the person they were looking for, but at least one of them told plaintiff that defendant could garnish her wages. In addition to forbidding misleading representations generally, § 1692e specifically forbids debt collectors from making any "representation or implication that nonpayment of any debt will result in . . . the seizure, [or] garnishment . . . of any . . . wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." 15 U.S.C. § 1692e(4). It also prohibits debt collectors from making any "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). At her deposition, plaintiff explained her theory that, having told defendant's collectors that she was not the person they were looking for, they continued calling in hopes that she would simply pay the debt anyway just to stop them from hassling her. (Pl.'s Dep. at 124:23-125:5.) If the jury believes her, then it could find that defendant falsely represented to her that it had "the last four digits of [plaintiff's] Social Security number" and could "just go into [plaintiff's] account and get the money," when in fact it had no such information or ability. (*Id.* at 103:23-104:14.) If the jury believes plaintiff, it could find that defendant threatened to garnish plaintiff's wages, although it had neither the intent nor the legal right to do so. These are potential violations of the FDCPA according to the plain text of 15 U.S.C. § 1692e(4) and (5), as well as § 1692e's general prohition of the use of "false, deceptive, or misleading

10

representation[s] in connection with the collection of any debt." *See Lox*, 689 F.3d at 825 ("[I]t is improper under the FDCPA to imply that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass."). Defendant's motion is denied as to plaintiff's § 1692e claim.

### C. Whether Defendant's Phone Calls Were Unfair Under 15 U.S.C. 1692f

Defendant argues that its conduct was not unfair or unconscionable under 15 U.S.C. § 1692f because that provision is a "catchall" for conduct not otherwise covered by the FDCPA. If plaintiff's allegations are true, then defendant's conduct falls within the scope of § 1692d and § 1692e, and according to defendant, that means it necessarily does not fall within the scope of § 1692f.

Some courts would agree with defendant that debt collection practices do not violate § 1692f if they violate other provisions of the FDCPA, *see, e.g., Mills v. Turner*, No. CV 15-13267-MLW, 2017 WL 3670967, at *11 (D. Mass. Aug. 25, 2017), but the Seventh Circuit is not among them. The Seventh Circuit has recognized that the same conduct can violate § 1692f as well as other provisions. *See McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 765 (7th Cir. 2006) (debtor who received letter accusing her of dishonesty stated claim under both §1692e(7) and f) (citing *Field v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004) (debtor who received misleading letter stated claim under §1692e and f))); *see also Todd*, 731 F.3d at 739 (citing as "instructive" *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1517 (9th Cir. 1994), which held that "seeking a writ of garnishment when the debtor was not behind in making payments can violate § 1692f," where debtor had also stated overlapping claims under § 1692d and e). This approach is consistent with the broad language of the statute, as the Seventh Circuit

11

explained in *McMillan*, 455 F.3d at 764-65, and as the Sixth Circuit explained in *Currier v. First Resolution Investment Corp.*:

> It must be remembered that the [FDCPA] prohibits "in general terms" harassing, unfair, or deceptive collection practices. S.Rep. No. 95-382, at 4, 1977 U.S.C.C.A.N. 1695, 1698. While "misleading" practices under § 1692e and "unfair" practices under § 1692f reference separate categories of prohibited conduct, they are broad, potentially overlapping, and are not mutually exclusive. A debt collector's action could be "misleading" under § 1692e, "unfair" under § 1692f, or, as alleged here, both.

762 F.3d 529, 536 (6th Cir. 2014); *see also Tarrant v. Portfolio Recovery Assocs., LLC*, No. 3:11-00664, 2011 WL 5042057, at *4–5 (M.D. Tenn. Oct. 24, 2011) (sending collection letter that failed to disclose debtor's rights under § 1692g was an "unfair" practice under § 1692f). In this circuit, § 1692f does not exclude certain conduct from its reach merely because that conduct is also covered by other provisions of the FDCPA.

As for what conduct § 1692f actually reaches, the Seventh Circuit has recognized that § 1692f's "unfair or unconscionable" phrase is "as vague as they come." *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007). This vagueness makes the provision difficult to apply, but in *Todd*, the Seventh Circuit traced certain guideposts in the case law:

> Case law . . . provides instructive examples of collection practices—both fair and unfair—that are not specifically addressed in § 1692f. Asking a consumer to pay a debt discharged in bankruptcy, for example, is not unfair or unconscionable within the meaning of § 1692f, though it violates another provision of the FDCPA. *Turner* [*v. J.V.D.B. & Assocs.*, 330 F.3d 991, 998 (7th Cir. 2003)]. Neither is it unfair for a college to withhold a student's transcript until she has settled her debt to the school. *Juras v. Aman Collection Serv., Inc.*, 829 F.2d 739, 742-44 (9th Cir. 1987). On the other hand, seeking a writ of garnishment when the debtor was not behind in making payments can violate § 1692f. *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1517 (9th Cir. 1994). And . . . in an opinion affirming a judgment in favor of the FTC and against a debt collector for violations of § 1692f and other sections of the FDCPA, the Third Circuit described the defendant's practice of calling debtors' family members and demanding payment as one of its most egregious practices, though the court did

12

> not specify which provision or provisions this particular conduct violated. See *FTC v. Check Investors, Inc.,* 502 F.3d 159, 164 (3d Cir. 2007) ("Check Investors' tactics apparently knew no limits. It routinely contacted family members of obligors. In one case, Check Investors [ ] repeatedly called a 64-year old mother regarding her son's debt; fearing that her son would be arrested and carted off to jail, she paid the amount of the demand.").

731 F.3d at 739. Based on this discussion, and particularly on the approving citation to *Fox*, this Court concludes that, viewing the facts in the light most favorable to plaintiff, a reasonable jury could conlude that defendant's conduct falls within the scope of § 1692f. For essentially the same reasons that defendant's conduct is potentially absusive and misleading under other sections of the FDCPA, it is potentially unfair under § 1692f: a reasonable jury could conclude that, by way of harassment and false threats, defendant sought to collect from plaintiff a debt that it knew or should have known that she did not owe. Defendant's motion is denied as to plaintiff's § 1692f claim.

### IV. ILLINOIS CONSUMER FRAUD ACT

"The elements of a claim under the Illinois Consumer Fraud Act, 815 ILCS 505/2, are: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996) (internal citation altered). The ICFA also prohibits "unfair" conduct, which courts are to identify as follows:

> In interpreting unfair conduct under the Consumer Fraud Act, Illinois courts look to the federal interpretations of unfair conduct under section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45. *Robinson* [*v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 960 (Ill. 2002)]; 815 ILCS 505/2. Thus, three considerations guide an Illinois court's determination of whether conduct is unfair under the Consumer Fraud Act: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson,* 75 N.E.2d at 961.

13

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008) (internal parallel citations omitted). Conduct violates the public policy prong of the unfairness test if it "is at least within the penumbra of some established concept of unfairness." *Ekl v. Knecht*, 585 N.E.2d 156, 163 (Ill. App. Ct. 1991); *see LSREF3 Sapphire Tr. 2014 v. Barkston Properties, LLC*, No. 14 C 7968, 2016 WL 302150, at *7 (N.D. Ill. Jan. 25, 2016). Additionally, to prevail on a claim under the ICFA, the plaintiff "must prove that he or she suffered 'actual damage as a result of a violation.'" *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 858-59 (Ill. 2005) (citing 815 ILCS 505/10a(a)). Defendant argues that plaintiff has not demonstrated any deceptive or unfair conduct or any actual damage.

Defendant's argument that plaintiff has not shown deceptive or unfair conduct essentially duplicates its arguments that its conduct was not deceptive or unfair under the FDCPA, and the Court rejects it for similar reasons. *See Sapphire*, 2016 WL 302150, at *6-7 (counterclaimants stated claim based on debt collector's abusive debt collection practices under FDCPA and ICFA).

As for whether plaintiff suffered actual damages, plaintiff testified that she was suspended from work for three shifts for answering one of defendant's telephone calls while at work, and she downloaded a call blocker application for her phone that, while free to download, charged regular usage fees. (Pl.'s LR 56. Resp. ¶ V.15.) While small, these are actual pecuniary damages for purposes of an ICFA claim. *Cf. Avery*, 835 N.E.2d at 859-60. However, defendant argues that plaintiff has not produced documentation substantiating them. In response to defendant's argument, plaintiff has pointed to nothing other than her deposition testimony.

The Court agrees with defendant that plaintiff's deposition testimony is insufficient to prove any damages with respect to the call blocker app. Plaintiff testified that she was charged

14

monthly fees for usage of the app, but she did not know the amount of the monthly fees or for how many months she paid them. Any amount the jury awarded in damages based on these fees would be arbitrary and purely speculative.

But the suspension is another matter. Plaintiff testified that she answered a call from defendant while at work; she earned about $7 an hour in that position; and she was suspended for three six-hour shifts. (Pl.'s Dep. at 100:2-101:15.) A reasonable jury, if it finds plaintiff credible and agrees with her that defendant caused these damages, could calculate actual damages with reasonable certainty based on that testimony.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [25] is granted in part and denied in part. The motion is granted as to plaintiff's TCPA claim (Count II). It is otherwise denied. The Court sets a status hearing for April 17, 2019 at 9:30 a.m.

**SO ORDERED.**                                                     **ENTERED: March 20, 2019**

**HON. JORGE ALONSO**
**United States District Judge**